IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAUSAU INSURANCE COMPANIES, INC. | : : : : : : : | CIVIL ACTION NO. 05-CV-2706 |
| v. | | |
| LISA P. LIGUORI and WILLIARD, INC. | | |
| LISA P. LIGUORI | : : : : : : : : : | CIVIL ACTION NO. 05-CV-3678 |
| v. | | |
| WAUSAU INSURANCE COMPANIES, INC. and NATIONWIDE MUTUAL INSURANCE COMPANY | | |

**SURRICK, J.**                                                                                    **SEPTEMBER 7, 2006**

**MEMORANDUM & ORDER**

Presently before the Court are Lisa P. Liguori's ("Liguori") Motion To Dismiss Plaintiff's Declaratory Judgment Complaint Pursuant To Federal Rule Of Procedure 12(b)(1) And 12(b)(6) (Doc. No. 6, 05-cv-2706), Wausau Insurance Companies, Inc.'s ("Wausau") Motions To Consolidate Actions And To Dismiss The Petition To Compel Underinsured Motorist Arbitration And Appoint Arbitrator (Doc. No. 2, 05-cv-3678), Wausau's Motion For Summary Judgment (Doc. No. 9, 05-cv-2706), Liguori's Motion To Remand (Doc. No. 3, 05-cv-3678), and Wausau's Motion For Leave To File Sur Reply In Response To Petitioner Liguori's Reply And In Further Opposition To Petitioner Liguori's Motion To Remand (Doc. No. 7, 05-cv-3678).  For the following reasons, Liguori's Motion to Remand will be denied, Wausau's Motion for Leave to File Sur Reply will be granted, Wausau's Motion to Consolidate will be denied, Wausau's Motion to Dismiss the Petition to Compel will be denied, Wausau's Motion for Summary Judgment will be denied, Liguori's Motion to Dismiss will be granted, and

Liguori's Petition to Compel Arbitration will be granted. The parties will be directed to proceed to arbitration in accordance with the terms of their agreement.

**I.      BACKGROUND**

    **A.      Factual Background**

The above-listed civil actions stem from an automobile accident that occurred on March 13, 1990 in Tinicum Township, Pennsylvania. The accident resulted in the death of Mark J. Liguori. Lisa P. Liguori is Mark Liguori's widow and the Executrix of his Estate.

At the time of his death, Mark Liguori was operating a 1989 Ford Aerostar van in the course and scope of his employment at Williard, Inc. (Doc. No. 1, 05-cv-3678, at Ex. A ¶ 14.) Mark Liguori was insured under a commercial auto policy issued by Wausau Insurance Companies, Inc. to Williard, Inc. and Anjou International, Inc. under policy number 2220-02-051982 for the period of April 1, 1989 to April 1, 1990 (the "Policy"). (Doc. No. 6, 05-cv-2706, at Exs. A, B.) This Policy provided bodily injury liability coverage up to a limit of $1,000,000. (*Id.* at Ex. A.) As per the Policy's "Pennsylvania Uninsured and Underinsured Motorists Coverage Endorsement" ("UM/UIM Endorsement"), it also provided underinsured ("UIM") motorist coverage. (*Id.* at Ex. C.) The UM/UIM Endorsement contained the following clause concerning arbitration:

> **ARBITRATION**
>
> a.    If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an

          arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    b.    Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act.  Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.  Local rules of law as to arbitration procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

(*Id.*)

        Mark Liguori was also insured under a personal automobile insurance policy issued by Nationwide Mutual Insurance Company ("Nationwide") under policy number 58 C 254469 for the period September 24, 1989 to March 24, 1990.  (Doc. No. 5, 05-cv-3678, at 2.)  This policy covered two vehicles—neither of which were involved in this accident—and included UIM motorist coverage up to a stacked limit of $50,000.  (Doc. No. 3, 05-cv-3678, at 3.)  The Nationwide policy also contained an arbitration clause.[1]

---

[1] The Nationwide arbitration clause provides as follows:

If we and the insured do not agree about the insured's right to recover damages or the amount of damages, the following arbitration procedure will be used:

After written demand for arbitration by either party, each party will select a competent and disinterested arbitrator.  The two so selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, the insured or the company may request that selection be made by a judge of a court of record in the county and state in which arbitration is pending.  Each party will pay its chosen arbitrator, and bear equally expenses for the third and all other expenses of arbitration.

(Doc. No. 1, 05-cv-3678, at Ex. A.)

On April 3, 1990, counsel for Liguori, Frank J. Wesner, Jr., notified Wausau in writing of Liguori's intent to make a claim for UIM benefits and requested certification of the amount of UIM coverage available. (Doc. No. 2, 05-cv-3678, at Ex. 2.) On June 6, 1990, Wausau responded to Wesner's letter, informing counsel that the UIM coverage was limited to $35,000 per accident and providing counsel with a copy of a UM/UIM Endorsement and a UM/UIM schedule of coverage by state. (*Id.* at Ex. 3.) Wausau asserts that no further communication was received from Liguori or her attorney in pursuit of the UIM claim, and Wausau therefore closed its file on this claim in October 1991. (*Id.* at 4.)

Following her husband's death, Liguori filed suit in the Court of Common Pleas of Delaware County against defendants Stanley Edward Marter, Blue Skies Transport Inc., and Nathaniel Dunn.[2] (Doc. No. 1, 05-cv-3678, ¶ 15; Doc. No. 2, 05-cv-3678, at Ex. 8.) According to Liguori, the trial of that case, which is docketed at No. 90-3698, has been significantly delayed by the bankruptcy of Blue Skies Transport, Inc. and by the Pennsylvania Supreme Court's final disposition of *Golkalb v. Pennsylvania Manufacturers' Ass'n Co.*, 719 A.2d 1033

---

Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Uniform Arbitration Act.

Unless the insured and the company agree otherwise, arbitration will take place in the county and state in which the insured lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will determine questions in dispute.

[2] Marter was driving the tractor-trailer truck that collided with Mark Liguori's van in the aforementioned accident. Blue Skies Transport Inc. and Dunn owned the tractor and trailer, respectively, that were operated by Marter. (Doc. No. 1, 05-cv-3678, ¶ 14.)

(Pa. 1998).[3]  (Doc. No. 2, 05-cv-3678, at Ex. 8.)  Liguori's case, which is presently assigned to the Honorable George A. Pagano, was placed in the trial pool for April 2005, but trial was continued at the request of Defendants.  (Doc. No. 1, 05-cv-3678, ¶ 16.)

On March 3, 2005, Wesner advised Wausau of the status of Liguori's third-party action in the Delaware County Court.[4]  By letter dated April 12, 2005, Wesner informed Wausau of Liguori's demand to arbitrate her UIM claim pursuant to the UM/UIM Endorsement and of Liguori's selection of an arbitrator.  (Doc. No. 6, 05-cv-2706, at Ex. F.)  Wausau refused Liguori's request to arbitrate.  Liguori made a similar demand for arbitration to Nationwide, which subsequently appointed an arbitrator.  (Doc. No. 2, 05-cv-3678, at Ex. 6.)  By letter dated May 2, 2005, Wesner articulated Liguori's demand to Wausau:

> for the amount of [UIM] benefits equal to the limits of liability insurance coverage for bodily injury[, $1,000,000 under this Policy,] unless there exists a written request for the issuance of UIM coverage in an amount less than the limits of liability insurance for bodily injury pursuant to § 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law [("MVFRL")], 75 Pa. Cons. Stat. § 1701, et seq.

(*Id.* at Ex. 5.)

---

[3] In *Golkalb*, the Supreme Court of Pennsylvania affirmed a decision denying appellant insurance carrier's request for subrogation from the proceeds of a third-party settlement received by appellee in a worker's compensation claim.  719 A.2d at 1035.  Appellee's claims stemmed from an automobile accident that occurred before Pennsylvania's Worker's Compensation Act, 17 Pa. Cons. Stat. § 1720, was amended to allow for subrogation in such situations.  However, the third-party settlement occurred after such amendment.  The Supreme Court found that the law in effect on the date of appellee's injuries controlled and therefore denied the request for subrogation.  *Golkalb*, 719 A.2d at 1035.

[4] This communication was directed to Liberty Mutual Insurance Company, the holding company which had acquired Wausau.

B.   **Procedural Background**

On June 8, 2005, Wausau filed an action for declaratory relief in this Court, naming both Liguori and Williard, Inc. as Defendants. (Doc. No. 1, 05-cv-2706.) Wausau seeks a declaration that Liguori's claim for UIM benefits is barred by the applicable statute of limitations. (*Id.* ¶¶ 24-30.) Wausau contends that Liguori's claim is time-barred regardless of whether the Court applies the MVFRL's statute of limitations for first-party benefits, 75 Pa. Cons. Stat. § 1721, or Pennsylvania's statute of limitations for breach of contract actions, both of which are four years. (*Id.* ¶¶ 25-28.) In the alternative, Wausau seeks a declaration that Liguori is limited to UIM benefits of $35,000 based on the doctrine of laches. (*Id.* ¶¶ 31-41.) Wausau points to its June 6, 1990 letter to Wesner and the fact that Liguori took no action to question or dispute the stated amount of coverage from 1990 to 2005, during which time Wausau failed to retain certain documents concerning the Policy, including any written request for UIM coverage in an amount less than the $1,000,000 limit of liability. (*Id.* ¶¶ 34, 36-38.)

On June 24, 2005, Liguori filed a Petition to Compel Underinsured Motorist Arbitration and to Appoint Arbitrator for Wausau Insurance Companies, Inc. (Doc. No. 1, 05-cv-3678, at Ex. A.) This action, which was filed in the Court of Common Pleas of Delaware County, named both Wausau and Nationwide as Defendants. (*Id.*) In her Petition, Liguori contends that Wausau's failure and refusal to appoint an arbitrator and to commence arbitration of Liguori's UIM claim has "effectively blocked [the] arbitration of her claims for [UIM] benefits from Nationwide," since the exhaustion of first-level UIM benefits is a condition precedent on any second-level recovery. (*Id.* ¶ 26.) On July 14, 2005, Wausau filed a Notice of Removal based on diversity of citizenship thereby removing Liguori's Petition to this Court. (*Id.* ¶¶ 5-10.)

On August 1, 2005, Liguori filed a Motion to Remand.  (Doc. No. 3, 05-cv-3678.)

## II.     MOTION TO REMAND

Under 28 U.S.C. § 1441(a), a defendant in a state court action may remove a case to federal court if the federal court could have originally exercised jurisdiction over the matter.  A case removed to federal court may be remanded to state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  *Id.* § 1447(c).  The removing party bears the burden of proving to a legal certainty that federal subject matter jurisdiction exists.  *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  Because § 1441 is strictly construed against removal, *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), all doubts as to whether a plaintiff satisfies the diversity requirement must be resolved in favor of remand.  *Samuel-Bassett*, 357 F.3d at 403.

Courts have interpreted §§ 1441 and 1446 to create a so-called "rule of unanimity," which requires that all defendants join in a removal petition or consent to removal of a case. *Jordan v. Phila. Housing Auth.*, Civ. A. No. 91-6191, 1991 U.S. Dist. LEXIS 15970, at *3 (E.D. Pa. Nov. 5, 1991) (citing *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985)).  Where the rule is violated, remand is appropriate.  *See McManus v. Gasman's Wynnefield Inc.,* 710 F. Supp. 1043, 1045 (E.D. Pa. 1989).  However, there are three instances where the rule may not apply:  (1) when the nonjoining defendant is a nominal party; (2) when the defendant has been fraudulently joined; or (3) when a defendant had not been served when the removing defendants filed their notice of removal.  *Shepard v. City of Phila.*, Civ. A. No. 00-CV-6076, 2001 U.S. Dist. LEXIS 783, at *4 n.1 (E.D. Pa. Jan. 31, 2001).  In this case, Nationwide has notified the parties of its

express refusal to consent to removal.  (Doc. No. 3, 05-cv-3678, at Ex. 3.)  Wausau argues that remand is not appropriate because Nationwide is a nominal party and its consent is not required.[5]

A nominal party is defined as one that is "neither necessary nor indispensable to join in the action."  *Mallalieu-Goldner Ins. Agency, Inc. v. Executive Risk Indem., Inc.*, 254 F. Supp. 2d 521, 524-25 (M.D. Pa. 2003) (internal quotations omitted).  Upon removal, the issue of whether a party is indispensable to an action is determined based on federal law, *id.* at 252 (citing *Shetter v. Amerada Hess Corp.*, 14 F.2d 934, 938 (3d Cir. 1994)), and is governed by Federal Rule of Civil Procedure 19.  Rule 19 establishes that a party is "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
> 　　(i) as a practical matter impair or impede the person's ability to protect that    interest or
> 　　(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).  Where it is determined that a party is not "necessary," that party is "by definition not 'indispensable' to the action."  *Mallalieu-Goldner*, 254 F. Supp. 2d at 525.

In cases such as this, where one party seeks relief from two other parties based on two separate contracts, the "third party is not a necessary or indispensable party to [the] action to determine the rights of [the] other parties under [their] contract, simply because the third party's rights or obligations under [that] entirely separate contract will be seriously affected by the

---

[5] In its Response to Liguori's Motion, Wausau briefly addresses its separate argument that Nationwide was fraudulently joined in this action.  (Doc. No. 5, 05-cv-3878, at 15.)  *See infra,* at 7-10.  We need not address this argument since we conclude that Nationwide is not a necessary or indispensable party.

action." *Special Jet Servs., Inc. v. Fed. Ins. Co.*, 83 F.R.D. 596, 599 (W.D. Pa. 1979). This principle has been extended to cases involving a first or primary insurer and a second insurer:[6]

> The fact that an insurer is concerned with the results of a lawsuit does not mean that it is a real party in interest nor a necessary party therein. Thus an insurance company may be interested in the result of an action against another insurance company on a policy, without being a real party in interest so as to be a necessary party, as, for instance, where such first company will be liable for the amount sued for, if it is not recovered in the action brought.

18 Couch on Insurance § 74:502 (2d ed. 1968) (cited in *Special Jet*, 83 F.R.D. at 599). Clearly, the general rule is that the "additional . . . insurers are not necessary parties to a suit between an insured and its primary . . . insurer." *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 748 F. Supp. 1057, 1065 (D. Del. 1990); *see also Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 870, 877 (E.D. Mich. 1999). This rule results from the fact that the absence of the second insurer does not prevent a court from providing relief as against the primary insurer. *Remington Arms Co.*, 748 F. Supp. at 1065. "A subsequent contribution action among [insurers liable on separate and different contracts] would not render the judgment [in the case against the primary insurer] 'hollow' or partial, or constitute the type of repeated lawsuit Rule 19 is designed to avoid." *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94 C 3303, 1996 WL 435180, at *6 (N.D. Ill. July 31, 1996).

In this case, Liguori's claims against Wausau and Nationwide derive from two separate

---

[6] Section 1733 of the MVFRL dealing with priority of recovery provides:
(a) General Rule - Where multiple policies apply, payment shall be made in the following order of priority:
(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident;
(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

and distinct insurance contracts. Liguori agrees that under § 1733 of the MVFRL, the UIM coverage provided by the Wausau Policy is primary to any coverage which may be available under the policy issued by Nationwide. (*Id.* at 11; *id.* at Ex. 2.) Depending upon whether Liguori recovers UIM benefits from Wausau, and in what amount, Liguori may be able to obtain a second recovery from Nationwide. (*Id.* at 11.) Liguori argues that Nationwide, based on its position in relation to Wausau, has a "legally and financially cognizable interest in the amount of UIM coverage available from Wausau and in the disposition of Wausau's UIM coverage at the arbitration of this case." (*Id.* at 12; Doc. No. 6, 05-cv-3578, at 4; Doc. No. 9, 05-cv-3678, at 3.) While this may be true, the clear weight of authority provides that this interest does not require a finding that Nationwide, as a second insurer, is a necessary or indispensable party. Under the circumstances, we are compelled to conclude that Nationwide is only a nominal party to this action, and Liguori's Motion to Remand must be denied.

### III.    ARBITRABILITY OF THIS DISPUTE

Addressing next the issue of the arbitrability of this dispute, Liguori contends that the issues raised in Wausau's declaratory judgment action should be submitted to arbitration, along with her underlying claim for UIM benefits, pursuant to the terms of the Wausau Policy. Wausau argues that the issues involved here are not arbitrable, but rather must be decided by this Court.

#### A.    Legal Standard

Liguori's Motion to Dismiss Wausau's Declaratory Complaint (Doc. No. 6, 05-cv-2706) is brought pursuant to Rules 12(b)(1) and 12(b)(6). Wausau has filed a Motion to Dismiss Liguori's Petition (Doc. No. 2, 05-cv-3678) pursuant to Rule 12(b)(6) or, in the alternative, for

Summary Judgment pursuant to Rule 56, as well as a Motion for Summary Judgment (Doc. No. 9, 05-cv-2706) pursuant to Rule 56(c).

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over the case. Fed. R. Civ. P. 12(b)(1). The person asserting that jurisdiction is proper bears the burden of showing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). In reviewing the merits of a Rule 12(b)(1) motion, a district court may consider evidence that is outside the pleadings. *Graham v. United States*, Civ. A. No. 97-1590, 2002 U.S. Dist. LEXIS 1765, at *4 (E.D. Pa. Feb. 5, 2002).

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rock v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)). The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.*, 883 F.2d at 247.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party is not required to file supporting affidavits "or other similar materials" with its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(b). However, the moving party still bears "the initial burden of demonstrating that there are no facts supporting the nonmoving party's legal position." *Celotex Corp.*, 477 U.S. at 322-24. "[T]he party moving for summary judgment cannot sustain his burden merely by denying the allegations in the opponent's pleadings." Wright & Miller, Federal Practice & Procedure § 2727.

### B. Legal Analysis

In Pennsylvania,[7] "[w]hen one party to an agreement seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the question of '(1) whether an agreement to arbitrate was entered into and (2) whether the dispute comes within the ambit of the arbitration provision.'" *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1168 (Pa. Super. Ct. 1994) (quoting

---

[7] Neither party directly addresses the issue of the applicable substantive law in this diversity action. However, both cite extensively to Pennsylvania statutes and caselaw. Under Pennsylvania's choice of law rules, an "insurance contract is governed by the law of the state in which the contract was made. An insurance contract is 'made' in the state in which the last act legally necessary to bring the contract into force takes place. In most cases, this last act is delivery of the policy to the insured and the payment of the first premium by him." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360-61 (3d Cir. 2004) (citations and quotation marks omitted). Here, we lack evidence of the place of delivery. Nevertheless, a presumption exists that delivery took place at the residence of the insured. *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi*, 825 F. Supp. 80, 84 (E.D. Pa. 1993). Williard, Inc. maintained a place of business in Pennsylvania, and Mark Liguori was a citizen of this state. We are satisfied that Pennsylvania law applies.

*Rocca v. Pa. Gen. Ins. Co.*, 516 A.2d 772, 773 (Pa. Super. Ct. 1986)).  Here, we focus entirely on the second question.  In interpreting the language of the Wausau Policy, we must "look to the words of the agreement in order to determine the parties' intent." *State Farm Mut. Auto. Ins. Co. v. Coviello*, 223 F.3d 710, 717 (3d Cir. 2000).  "[W]e are bound to give effect to clear and unambiguous language" and "are not at liberty to rewrite an insurance contract, or to construe clear and unambiguous language to mean something other than what it says." *Id.* (internal citations omitted).  However, where we find an ambiguity, it will generally be construed against the insurer that drafted the policy. *Nat'l Grange Mut. Ins. Co. v. Kuhn*, 236 A.2d 758, 760 (Pa. 1968).  We also note the presence of the "strong public policy favoring arbitration." *Cont'l Cas. Co. v. Gezon*, C.A. No. 94-1767, 1994 U.S. Dist. LEXIS 7190, at *6 (E.D. Pa. May 26, 1994).  If claimants were constantly forced to undertake judicial proceedings to compel arbitration, the costs to claimants would be significant and submission to arbitration would be discouraged. *Id.*

There exists a substantial body of caselaw indicating that the dispute at issue in this case should proceed to arbitration.  The seminal case is *Brennan v. General Accident Fire & Life Assurance Corp., Ltd.*, 574 A.2d 580 (Pa. 1990), in which the Supreme Court of Pennsylvania interpreted an arbitration clause almost identical to the clause involved here.  The arbitration clause at issue in *Brennan* provides, in pertinent part:

> If we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party may make a written demand for arbitration.  In this event each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within thirty days, either may request that selection be made by a judge or a court having jurisdiction.  Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives.  Local rules of law as to procedure and evidence will apply.  A decision agreed to by two of the arbitrators will be binding.

574 A.2d at 582.⁸

Upon review, the court found "no limit to the jurisdiction of the arbitrators over what issues may be submitted" and held that, pursuant to the policy, "all disputes between the insurance company and the insured will be arbitrated." *Id.* at 583. *Brennan* has been interpreted broadly by Pennsylvania courts and federal courts alike in similar disputes over insurance coverage. *See McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 553-54 (3d Cir. 1992) (affirming decision to compel arbitration, based on *Brennan*, given similar clause and coverage dispute concerning UIM benefits); *see also Gezon*, 1994 U.S. Dist. LEXIS 7190, at *3-10 (applying *Brennan* and granting petition to compel arbitration, given similar clause, where insurer argued UIM claimant was not an "insured" under the policy); *Borgia v. Prudential Ins. Co.*, 750 A.2d 843, 849-851 (Pa. 2000).

Moreover, those cases where courts have refused to compel arbitration, including those relied on by Wausau, are easily distinguished from the case at bar. In *Coviello*, the Third Circuit addressed two arguments in support of reversal of a judgment compelling arbitration in a UIM coverage dispute. *Coviello*, 233 F.3d at 710. First, the court determined that the specific issue in dispute—whether the "family vehicle exclusion" in plaintiff's UIM policy "r[an] counter to legislative mandate set forth in the Pennsylvania MVFRL"—was a matter of public policy, which might suggest the "'approv[al of] the use of a declaratory judgment action despite the presence of an arbitration agreement.'" *Id.* at 713, 715 (quoting *Warner v. Cont'l/CNA Ins. Cos.*, 688 A.2d 177, 181 (Pa. Super. Ct. 1996). The court found, however, that this issue was unsettled

---

⁸ We note that the clause in *Brennan* provides for common law arbitration, while the Wausau Policy dictates arbitration pursuant to the Pennsylvania Uniform Arbitration Act. This difference does not compel a different result. *See Messa*, 641 A.2d at 1168; *Nagle v. Allstate Ins. Co.,* 516 A.2d 1191, 1197 (Pa. Super. Ct. 1986).

under state law and turned its analysis to an interpretation of the language of the arbitration clause. *Id.* at 716.  The court specifically distinguished the clause in Coviello's policy from the clause in *Brennan* and concluded that the *Coviello* dispute was outside the scope of arbitration in that the *Coviello* "insurance policy place[d] an explicit limit on the arbitrators' jurisdiction."[9] *Id.* at 719.  More recently, in *State Farm Mutual Automobile Insurance Co. v. Hughes*, Civ. A. No. 05-3391, 2005 U.S. Dist. LEXIS 37546 (E.D. Pa. Dec. 30, 2005), the district court considered the arbitrability of a coverage dispute under an arbitration provision identical to that in *Coviello*.  *Id.* at *4-10.  Noting the "stark" difference between the provision in *Brennan* and the provision in the State Farm policy at issue in *Coviello*, the petition to compel arbitration was denied.  *Id.* at *10.

Wausau argues that its statute of limitations claim raises a matter of public policy and is thus not arbitrable as per *Coviello* and *Warner.*  However, Wausau offers no authority in support of this argument.  Morever, we note that in *Holland v. Geico Gen. Ins. Co.*, No. Civ. A. 00-4979,

---

[9] The arbitration clause in *Coviello* provided:

Section III – Uninsured . . . Underinsured Motor Vehicle Coverage
. . .
Deciding Fault and Amount – Coverages U, U3, W and W3
Two questions must be decided by agreement between the insured and us:

    (1) Is the insured legally entitled to collect compensatory damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle; and
    (2) If so, in what amount?

    If there is no agreement, these two questions shall be decided by arbitration at the request of the insured or us. The arbitrators' decision shall be limited to these two questions.

*Coviello*, 233 F.3d at 717.

2001 WL 1818099, at *2 (E.D. Pa. Dec. 5, 2001), *aff'd*, 62 Fed. App'x 415, 416 (3d Cir. 2002) (citing *Brennan*, 574 A.2d at 580), a statute of limitations claim similar to Wausau's claim was submitted to arbitration after being bifurcated from another issue which was deemed a matter of public policy. *Id*. at *2. The *Holland* court first addressed a dispute as to whether a UM claim was barred under the Pennsylvania Workers' Compensation Act, insofar as the parties agreed that this "coverage issue should not be resolved by arbitration because [it] implicate[d] public policy." 2001 WL 1818099, at *4. The statute of limitations issue, however, was found to be definitively within the scope of arbitration.[10] *Id.* at 12; *cf. Messa*, 641 A.2d at 1169 (compelling arbitration where insurer claims UM benefits were barred by statute of limitations); *Merchants Mut. Ins. Co. v. Am. Arbitration Assoc.*, 248 A.2d 842 (Pa. 1969) (same). The similarity between the instant case and *Holland* is compelling.[11]

We find no support for Wausau's contention that the statute of limitations dispute implicates a matter of public policy and cannot be resolved in arbitration. Moreover, as

---

[10] The arbitration clause in *Holland* read:

If any insured making claim under this policy and we *do not agree that he is legally entitled to recover damages* under this coverage from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or *do not agree as to amount payable*, either party will have the right to arbitrate the controversy under the provisions of the Pennsylvania Uniform Arbitration Act.

2001 WL 1818099, at *12 (emphasis added).

[11] Wausau argues that the arbitration clause in *Holland* is distinguishable, in that it allows arbitration when the insured and insurer "do not agree as to amount payable," whereas the Wausau Policy is restricted to disagreements "as to the amount of damages." (Doc. No. 9, 05-cv-2706, at 17-18.) According to Wausau, GEICO's policy thus encompassed "not only disagreements about the amount of damages . . . but also, arguably, disagreements about the scope of coverage provided by the policy for payment of those damages." (*Id.* at 17.) We find this argument unpersuasive.

discussed above, the arbitration clause in Wausau's UM/UIM Endorsement is very similar to the clauses in *Brennan* and *Holland*, and is different from the clauses in *Coviello* and *Hughes*. Under the former clauses, arbitration was compelled even in disputes where the Statute of Limitations was at issue. In addition, Wausau's alternative ground for declaratory relief—that the doctrine of laches should limit Liguori's UIM recovery to $35,000—evinces an obvious disagreement as to "the amount of damages," a matter undoubtedly within the scope of the UM/UIM Endorsement's arbitration clause. Under the circumstances, we conclude that Liguori's claim should properly be submitted to arbitration, where we expect that the arbitrators will give careful consideration to the merits of Wausau's statute of limitations defense and Wausau's claim that under the doctrine of laches the amount of damages recoverable under the policy should be reduced.[12] Accordingly, Wausau's declaratory judgment action will be dismissed pursuant to Liguori's Motion to Dismiss, and Liguori's Petition to Compel Arbitration will be granted.

      An appropriate Order follows.

---

[12] Under the Pennsylvania Uniform Arbitration Act, pursuant to which this claim is to be arbitrated, "[o]nce it has been determined that an agreement to arbitrate exists and that the dispute falls within the arbitration provision, the trial court . . . must order the parties to proceed with arbitration. In such cases, the court is not free to examine the merits of the controversy." *Messa*, 641 A.2d 1168 (citing 42 Pa. Cons. Stat. § 7304).

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAUSAU INSURANCE COMPANIES, INC. | : : : | CIVIL ACTION |
| v. | : : | NO. 05-CV-2706 |
| LISA P. LIGUORI and WILLIARD, INC. | : : | |

_____

| | | |
|---|---|---|
| LISA P. LIGUOURI | : : | CIVIL ACTION |
| v. | : : : | NO. 05-CV-3678 |
| WAUSAU INSURANCE COMPANIES, INC. and NATIONWIDE MUTUAL INSURANCE COMPANY | : : : : | |

**ORDER**

AND NOW, this 7th day of September, 2006, upon consideration of Lisa P. Liguori's Motion To Dismiss Plaintiff's Declaratory Judgment Complaint Pursuant To Federal Rule Of Procedure 12(b)(1) And 12(b)(6) (Doc. No. 6, 05-cv-2706), Wausau Insurance Companies, Inc.'s Motions To Consolidate Actions And To Dismiss The Petition To Compel Underinsured Motorist Arbitration And Appoint Arbitrator (Doc. No. 2, 05-cv-3678), Wausau's Motion For Summary Judgment (Doc. No. 9, 05-cv-2706), Liguori's Motion To Remand (Doc. No. 3, 05-cv-3678), Wausau's Motion For Leave To File Sur Reply In Response To Petitioner Liguori's Reply And In Further Opposition To Petitioner Liguori's Motion To Remand (Doc. No. 7, 05-cv-3678), it is ORDERED as follows:

    1.    Liguori's Motion to Remand (Doc. No. 3, 05-cv-3678) is DENIED.

2. Wausau's Motion for Leave to File Sur Reply (Doc. No. 7, 05-cv-3678) is GRANTED.

3. Wausau's Motion to Consolidate Actions (Doc. No. 2, 05-cv-3678) is DENIED.

4. Wausau's Motion to Dismiss the Petition to Compel Underinsured Motorist Arbitration and Appoint Arbitrator (Doc. No. 2, 05-cv-3678) is DENIED.

5. Wausau's Motion for Summary Judgment (Doc. No. 9, 05-cv-2706) is DENIED.

6. Liguori's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint Pursuant to Federal Rule of Procedure 12(b)(1) and 12(b)(6) (Doc. No. 6, 05-cv-2706) is GRANTED.

7. Liguori's Petition to Compel Arbitration is GRANTED. The parties are directed to proceed to arbitration.

IT IS SO ORDERED.

BY THE COURT:

/s/ R. Barclay Surrick
United States District Court Judge